**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| MONICA BRUNTY, on behalf of herself and others similarly situated, | |
| Plaintiff, | |
| v. | **Civil Action No.** 2:19-cv-255-RAJ-DEM |
| OPTIMA HEALTH PLAN, and SENTARA HEALTH PLANS, INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR
STANDARDS ACT, FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR,
FOR APPROVAL OF SERVICE AWARDS, AND FOR APPROVAL OF ATTORNEYS'
<u>FEES AND COSTS</u>**

## I.    <u>INTRODUCTION</u>

Named Plaintiff Monica Brunty, on behalf of herself and all other persons similarly situated, and Optima Health Plan and Sentara Health Plans, Inc. ("Defendants") have reached a settlement in this lawsuit (the "Action"). The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging information and payroll records, and after participating in a day long mediation with the Honorable F. Bradford Stillman (Ret.). The terms of the settlement are reasonable, appropriate, and fair to all Parties and Settlement Class Members.

The Parties' Settlement covers the Named Plaintiff Monica Brunty, Opt-in Plaintiffs Pamela Langley, Kirby Baughn, Beth-Anee Fretz, Meagan Painter, Diana Perry, and Ashley Roby (Named Plaintiff and Opt-in Plaintiffs are referred to in this memorandum as "Plaintiffs"), and the claims of 171 similarly situated individuals who worked in the position of salaried Care Coordinator Non-RN between April 30, 2017 and February 5, 2020. After approval, all Plaintiffs and Settlement Class Members will receive a Settlement Payment issued by a Settlement Administrator. Participating Class Members, which includes the Named Plaintiff, Opt-in Plaintiffs, and all Settlement Class Members who elect to participate in the Settlement by negotiating the settlement check issued to them, will provide Defendants with a limited release of the claims they have for or related to unpaid overtime wages under the FLSA, state, local, or common law for the time they worked as salaried Care Coordinator Non-RNs for Defendants. Settlement Class Members who did not previously join the Action as an Opt-in Plaintiff and who do not cash their Settlement Payment checks will *not* release any claims against Defendants.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, Plaintiffs respectfully request

the Court approve their Joint Stipulation of Settlement (herein "Joint Stipulation"), attached

hereto as Exhibit 1, and appoint Analytics Consulting LLC as the third-party Settlement

Administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Defendants operate a health insurance company under the trade name Optima Health and

provide health plan coverage to approximately 450,000 members. Answer to First Am.

Collective Action Compl., ¶ 1, ECF No. 18. Named Plaintiff Monica Brunty worked for

Defendant Optima Health Plan as a Care Coordinator Non-RN in Virginia between

approximately October 2017 and February 2018. *Id. ¶* 9. The six additional Plaintiffs who opted

into this case before September 1, 2019, also worked for Optima Health Plan in Virginia as

salaried Care Coordinator Non-RNs. Exhibit 2, Declaration of Maureen A. Salas ¶ 16, (herein,

"Salas Decl. ¶__").

Plaintiffs allege that Care Coordinator Non-RNs primarily performed non-exempt job

duties including asking members standardized questions to document their medical

circumstances, inputting answers to those questions into Defendants' care management system,

coordinating care by performing ministerial tasks like arranging appointments, referrals, and

obtaining necessary authorizations from individuals, supplying members with additional

information and resources to allow them to educate themselves about their health plans, and

other similar work. First Amended Collective Action Complaint ¶ 7, ECF No. 17. Plaintiffs

further allege that as part of their job duties, Care Coordinator Non-RNs did not exercise

independent clinical judgment, did not provide traditional nursing care in a clinical setting, and

did not provide medical care to members. *Id.* at ¶¶ 18-20. And Plaintiffs allege that Care

Coordinator Non-RNs regularly worked more than 40 hours per week and were not paid overtime at one and one-half times their regular rate. *Id*. at ¶¶ 23-28.

Plaintiffs claim that because Defendants' Care Coordinator Non-RNs primarily performed non-exempt work, Defendants violated the Fair Labor Standards Act by failing to pay Care Coordinator Non-RNs when they worked over 40 hours per week. *Id.* at ¶¶ 59-66. The Named Plaintiff brought her FLSA claim individually and collectively on behalf of salaried Care Coordinator Non-RNs who worked more than 40 hours in at least one workweek where they received pay on a salary basis within the last three years. See Consent Order on Motion to Conditionally Certify Narrowed Class and Approve Notice to Potential Plaintiffs ¶ 1, ECF No. 34

Defendants do not admit any liability, deny any wrongdoing and deny that Plaintiffs and Settlement Class Members are entitled to any damages. Defs.' Answer to First Amended Collective Action Complaint ¶¶ 59, 60, 61, 65, 66, ECF No. 18. Defendants deny any and all allegations relating to this matter, including, among other things, that they failed to pay overtime wages or that they otherwise violated their legal obligations. *Id.* Defendants asserted affirmative defenses, including statutory exemptions under the Fair Labor Standards Act, contending that Care Coordinator Non-RNs are exempt under the professional, the administrative exemption and/or the combination/hybrid exemption of the FLSA and are not entitled to overtime wages. Defs.' Answer to First Amended Collective Action Complaint, Seventh Affirmative Defense. Defendants further asserted that even if Care Coordinator Non-RNs were entitled to overtime wages under the FLSA, witness testimony, mileage reports, and the time stamps in Defendants' care management software would prove that Care Coordinator Non-RNs worked less than forty hours a week in all or at least the majority of weeks they worked for Defendants. Ex. 2, Salas

Decl. ¶ 14.

> **B.  Overview of Investigation, Litigation, and Settlement Negotiations**
>
> **1.  Procedural History of the Litigation & Investigation**

The Named Plaintiff filed this Action on May 15, 2019.  Complaint, ECF No. 1. Pamela Langley filed her consent form on May 16, 2019. Consent, ECF No. 3-1. The Parties attended a Rule 16(b) Scheduling Conference on August 22, 2019, and a scheduling order was entered. That scheduling order set a fact discovery deadline for December 17, 2019. *See* Rule 16(b) Scheduling Order, ECF No. 24. The Parties shortly thereafter filed a consent motion for continuance of trial date and stay of discovery because Plaintiffs intended to file a contested motion for conditional certification. *See* Consent Motion for Continuance of Trial and Stay of Discovery, ECF No. 25. The Parties requested that the Court set a briefing schedule on Plaintiffs' Motion for Conditional Certification and stay discovery until after the Court ruled on Plaintiffs' Motion because it would not be clear who (or how many plaintiffs) would join the case until after the Court ruled on Plaintiffs' Motion. *See* Memo in Support of Consent Motion for Continuance of Trial Date and Stay of Discovery, ECF No. 26. The Court granted the Parties' Motion on September 11, 2019, and ordered Plaintiffs to file their Motion for Conditional Certification by September 19, 2019. *See* Consent Order, ECF No. 29.

Before Plaintiffs' contested Motion for Conditional Certification was due to be filed, five additional plaintiffs filed consent forms to join this lawsuit. *See* Consents, ECF Nos. 27-1—27-5. The Parties also began discussing whether they could agree to conditional certification of a narrowed FLSA class and agree on the form of notice to be issued to potential opt-in plaintiffs. Ex. 2, Salas Decl. ¶ 19. The Parties were able to reach an agreement. *Id.* Plaintiffs agreed to narrow the scope of the putative FLSA class to persons who worked for Defendants as salaried

Care Coordinator Non-RNs, and in exchange, Defendants agreed to consent to Plaintiffs' request for conditional certification. *Id*. The Parties filed a Consent Motion to Conditionally Certify Narrowed Class and Approve Notice to Potential Plaintiffs on September 18, 2019. ECF No. 30. Notice was never issued to putative class members in this case, because as described in the following paragraphs, the Parties reached a settlement in this matter before the notice was scheduled to be issued. Ex. 2, Salas Decl. ¶ 19.

### 2.    Exchange of Documents and Information

The Parties exchanged disclosures under Fed. R. Civ. P. 26(a) on September 6, 2019. Ex. 2, Salas Decl. ¶ 18.  Defendants produced 488 documents to Plaintiffs, and Plaintiffs produced eighty documents to Defendants. *Id*. On November 12, 2019, the Parties had a telephonic conference where they explored the possibility of resolution of the overtime claims of the class of Care Coordinator Non-RNs. Ex. 2, Salas Decl. ¶ 20. The Parties conferred over the documents and information Plaintiffs would need to assess damages, and they also conferred over potential mediators. *Id*. The Parties agreed to mediate with the Honorable F. Bradford Stillman (Ret.) on February 5, 2020. *Id*.

Prior to the mediation, the Parties engaged in extensive and detailed investigation and exchange of information regarding the performance of job duties, method of compensation, hours worked, mechanisms that could identify time worked, complaints made to management regarding hours worked, unpaid overtime, and Plaintiffs' caseloads. Ex. 2, Salas Decl. ¶ 21. Defendants produced 164 separate payroll spreadsheets in excel, one for each Care Coordinator Non-RN, and sample mileage reports, audit reports and employee time records for three Care Coordinator Non- RNs. *Id*.

Plaintiffs' counsel thoroughly analyzed the merits of the case and the value of Plaintiffs' and Potential Settlement Class Members' claims during the prosecution of this action. Ex. 2, Salas Decl. ¶ 22. The discovery process included, among other things, (1) multiple conferences with Plaintiffs; (2) surveys sent to Plaintiffs to gather information to support their claims and damages; (3) the exchange of Rule 26(a)(1) disclosures; (4) conferences with Defendants regarding the scope of production, including a class list and compensation and time data; (5) inspection and analysis of the documents and materials produced by Plaintiffs, Opt-in Plaintiffs and Defendants; (6) analysis of the various legal positions taken and defenses raised by Defendants; (7) investigation and analysis of the guidelines used by Care Coordinator Non-RNs in the performance of their work; (8) assembling and analyzing data to compute potential class-wide damages; and (9) investigation regarding comparable settlements in similar cases involving allegedly misclassified care management employees. *Id.*

### 3.    The Parties Successfully Resolved the Claims at the Mediation

The Parties participated in a joint pre-mediation conference call with Judge Stillman on January 14, 2020, and they participated in one-on-one calls with Judge Stillman on January 28, 2020, following the submission of their mediation statements. Ex. 2, Salas Decl. ¶ 23. The Parties exchanged portions of their mediation statements with each other in advance of the February 5th mediation. *Id.*

The Parties reached a settlement at the mediation, and they executed a term sheet reflecting the material terms forming the basis of the Settlement Agreement that is now being submitted for this Court's consideration. Ex. 2, Salas Decl. ¶ 24. The investigation conducted in this matter, as well as discussions between counsel, have been more than sufficient to give the Plaintiffs and their Counsel a sound understanding of the merits of their positions and to evaluate

the claims in the case. Ex. 2, Salas Decl. ¶ 25. Plaintiffs and their Counsel believe that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of Plaintiffs and Potential Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendants would prevail on its defenses, and numerous potential appellate issues. *Id.*

## III.   <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### A.   **The Settlement Fund**

Defendants have agreed to pay $868,000.00 to settle the claims in this Action, which shall be used to provide for (i) Settlement Payments to Plaintiffs and Settlement Class Members; (ii) Participation Payments to the Plaintiffs; (iii) Plaintiffs' Attorneys' Fees; (iv) Plaintiffs' Litigation Expenses; and (v) the costs of Settlement Administration. Ex. 1, Joint Stipulation, § 5(a). The Settlement Fund does not include the employer's share of applicable employment taxes, which will be paid by Defendants outside the Gross Settlement Amount. Ex. 1, Joint Stipulation, § 5(c).

### B.   **Settlement Class Members and Distribution of Settlement Checks**

The Settlement covers 178 individuals, including the seven Plaintiffs who have already opted into the Action, who worked for Defendants in Virginia as Care Coordinator Non-RNs between April 30, 2017 and February 5, 2020, and for whom Defendants provided data during the Action. Ex. 1, Joint Stipulation, § 1(q). All Settlement Class Members are identified in Attachment A to the Joint Stipulation. The Settlement does not resolve or release the claims of Settlement Class Members who have not previously opted into the Action and who do not negotiate their settlement check. Ex. 1, Joint Stipulation, § 7(c).

The Parties have selected Analytics Consulting LLC to be the Settlement Administrator. Ex. 1, Joint Stipulation, § 1(p). Should the Court approve the Settlement, the Settlement Administrator will shortly thereafter mail to all Settlement Class Members a check representing his or her Settlement Payment along with a Notice of Settlement of Collective Action explaining the key terms of the Joint Stipulation. Ex. 1, Joint Stipulation, § 10(g)(i). A copy of the Notice that will be mailed with the Settlement Payments is included as Attachment B to the Joint Stipulation.

Pursuant to Section 10 of the Joint Stipulation, no later than 28 days after approval of the Parties' Joint Stipulation, the Settlement Administrator shall mail the Settlement Notice and Settlement Payments to Plaintiffs and Settlement Class Members via First Class U.S. Mail. Ex. 1, Joint Stipulation, § 10(g)(i).  The Settlement Payment checks shall be negotiable for 120 days from the date they are mailed by the Settlement Administrator (the "Check Cashing Deadline"). *Id.* The Settlement Administrator will forward any settlement checks returned as undeliverable with a forwarding address to the identified forwarding address. *Id.* § 10(g)(iv). If any settlement checks are returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will attempt to contact the Settlement Class Member via telephone, and if unsuccessful, will run a new search of the Settlement Class Member's social security number and name through available databases, and will forward the Settlement Payment to the Settlement Class Member at the new address obtained in this manner, if any. *Id.* If the Settlement Payment is returned as undeliverable after the second mailing, or if no forwarding address is otherwise located before the Check Cashing Deadline, the notice process shall end for that Settlement Class Member. *Id.*

**C.    Limited Release for Settlement Class Members**

Participating Class Members will release the Released Parties from all claims or causes of action they have for or related to unpaid overtime wages while they worked as salaried Care Coordinator Non-RNs during the Settlement Time Period, including under the FLSA, state law, local law or common law. Ex. 1, Joint Stipulation of Settlement, § 7(a). The term Participating Class Members includes the Named Plaintiff, the six Opt-in Plaintiffs, and all Settlement Class Members who elect to participate in the Settlement by negotiating the settlement check issued to them. *Id.* §(1)(i).  Settlement Class Members who did not previously opt-into the case and who do not negotiate their Settlement Payment shall *not* release their federal, local, or state overtime claims against Defendants pursuant to the Joint Stipulation of Settlement. *Id.* § 7(c).

**D.    Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds**

Each Settlement Class Member's individual settlement payment has been calculated using the payroll data Defendants produced in the litigation. Because Defendants did not keep track of the hours each Settlement Class Member worked during each week, Plaintiffs' Counsel calculated each Settlement Class Member's alleged hours based on the number of regular hours he or she was paid for working in the two week pay period. *Id.* § 6(a).  Plaintiffs' Counsel distributed regular work hours from 0 to 40 into work week 1 and any regular hours greater than 40 to work week 2. *Id.* § 6(a)(ii).  For settlement distribution purposes, Plaintiffs added 5 additional hours of work time to each work week, and the sum equal the total hours worked per work week. *Id.* § 6(a)(iii).

The Settlement Class Member's Regular Rate for each pay period was calculated by totaling the Settlement Class Member's earnings for each pay period, allocating half the earnings to work week 1 and half the earnings to work week 2, and by dividing the weekly earnings by the

total number of hours assumed to have been worked per week for settlement purposes. *Id.* § 6(a)(iv)-(vi). If the total hours worked per work week for settlement purposes exceeds 40, the overtime hours in the work week equals the number of hours over 40. *Id.* § 6(a)(vii). For each pay period, the Settlement Class Member's regular rate multiplied by the number of overtime hours and by 0.5 equals the Settlement Class Member's overtime wages owed in the work week. *Id.* § 6(a)(viii). Liquidated damages were computed to equal the amount of overtime wages owed in the work week. *Id.* § 6(a)(ix).

The sum of each Settlement Class Member's total overtime wages and liquidated damages for all work weeks divided by the sum of all Settlement Class Members' total overtime wages and liquidated damages is each Settlement Class Member's "Ratable Share." *Id.* § 6(a)(xi). Each Settlement Class Member's Settlement Payment shall be calculated by multiplying his or her Ratable Share by the Net Settlement Amount. *Id.*

Each Settlement Class Member will receive his or her Settlement Payment in one check, with half of the Settlement Payment representing owed wages and the other half of each Settlement Payment representing liquidated damages. *Id.* § 6(c). Regular employee payroll deductions shall be withheld from the portion of each Settlement Payment that is allocated to wages. The Settlement Administrator will issue each Settlement Class Member an IRS Form W-2 for the wage portion of each Settlement Payment and an IRS Form 1099 for the liquidated damages portion of each Settlement Payment. *Id.* Any Settlement Payments that remain uncashed after the Check Cashing Deadline will be returned to Defendants. *Id.* § 10(vii).

### E.     Service Awards and Attorneys' Fees and Litigation Costs

Plaintiffs' Counsel shall apply for a Participation Payment to the Named Plaintiff in the amount of $5,000. *Id.*, § 9(d). Plaintiffs' Counsel shall apply for a Participation Payment to be

paid to each of the six Opt-in Plaintiffs in the amount of $1,000 each. *Id.*, § 9(e). Plaintiffs' Counsel shall also request an amount not to exceed $289,333.33 from the Settlement Fund as attorneys' fees, and an amount not to exceed $6,000 for reimbursable litigation expenses. *Id.,* § 9(a).

## IV.    THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Courts in the Fourth Circuit require parties to obtain court approval of an FLSA Settlement. *Gagliastre v. Cap. George's Seafood Restaurant, LP,* No. 2:17 cv 379, 2019 WL 2288441, at *1 (E.D. Va. May 29, 2019) (Jackson, J.). The standard for approval is straightforward. A court should approve an FLSA settlement if it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Minsterman v. S.L. Nusbaum Realty Co.,* No. 2:10 cv 303, 2011 WL 9687817, at * 1 (E.D. Va. Jan. 21, 2011), citing *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1355 (11th Cir. 1982). When analyzing whether the settlement meets the standard for approval, a strong presumption exists in favor of a finding that a settlement is fair. *Gagliastre,* 2019 WL 2288441, at *1.

In evaluating whether an FLSA settlement meets the standard for approval, a court makes the following three determinations: (1) whether the FLSA issues are actually in dispute; (2) whether the settlement is a reasonable compromise over the issues, and (3) if there is a clause on attorneys' fees, that the attorney fee award is a reasonable request.  *Gagliastre,* 2019 WL 2288441, at * 1; *Brockman v. Keystone Newport News, LLC,* No. 4:15-cv-74, 2018 WL 4956514, at *2 (E.D. Va. October 21, 2018) (Jackson, J.). The Parties' Settlement Agreement meets the standard for approval.

### A.    The Proposed Settlement Resolves a Bona-Fide Dispute Between the Parties

The Settlement is a result of contested litigation and was reached only after the Parties

performed an extensive investigation and litigated this matter for nine months, as described in Section II, *supra*. The Parties vigorously contested numerous substantive issues, including whether Care Coordinator Non-RNs were properly classified as exempt, whether they worked over forty hours a week, the appropriateness of liquidated damages, and whether this case could be tried as a collective action. The Settlement was reached only after the parties attended a day-long mediation with retired Judge F. Bradford Stillman.

Plaintiffs alleged Defendants violated the FLSA by misclassifying Care Coordinator Non-RNs as exempt and failing to pay them overtime at one and one-half times their regular rate when they worked more than forty (40) hours per week. Ex. 2, Salas Decl. ¶ 12. In support of their position, Plaintiffs relied on guidance from the U.S. Department of Labor and judicial decisions holding that the administrative and learned professional exemptions do not apply to case managers working the managed care industry.[1] *Id.* Defendants denied the allegations and asserted that Care Coordinator Non-RNs are exempt employees. Defendants relied on different judicial decisions to support its position that the white-collar exemptions applied to the Care Coordinator Non-RNs.[2] Ex. 2, Salas Decl. ¶ 13.

The Parties also disputed the number of hours Care Coordinator Non-RNs worked per week.  Ex. 2, Salas Decl. ¶ 14. Care Coordinator Non-RNs worked remotely, visiting members and performing work from their homes. *Id.* Defendants did not track Care Coordinator Non-RNs' work hours. *Id.* Plaintiffs claimed they regularly worked a minimum of 40 to 45 hours a week and at times worked over fifty hours a week. Defendants, on the other hand, asserted a review of

---

[1] *See* Opinion Letter Fair Labor Standards Act (FLSA), 2007 WL 541650, at *2 (Fed. 8, 2007); *Clark v. Centene Co. of Texas, L.P.,* 44 F. Supp. 3d 674, 682–83 (W.D. Tex. 2014).
[2] *Williams v. Genex Services, LLC,* 809 F.3d 103 (4th Cir. 2015) (holding that a registered nurse working as a field medical case manager was not entitled to overtime under the learned professional exemption under the FLSA).

their business records, including mileage reports and time stamped entries in their case management software, demonstrated that at least half of their Care Coordinator Non-RNs never worked more than forty (40) hours per week and that other Care Coordinator Non-RNs potentially worked negligible amounts of overtime. *Id.*

The Parties also disputed whether liquidated damages were appropriate, whether if overtime violations occurred, they were willful violations that triggered the three-year statute of limitations period, and whether this action could proceed to trial on a collective action basis. Ex. 2, Salas Decl. ¶ 15. If the matter had not settled, Plaintiffs risked decertification of their FLSA collective action after discovery, a process that would have been time-consuming and costly for all Parties. *Id.*

This procedural posture, where Defendants denied that they violated the FLSA by classifying Care Coordinator Non-RNs as exempt and where settlement was reached only after private mediation, supports the finding that a bona-fide dispute exists between the Parties. *Davis v. Terminex Company, Inc.,* No. 2:09 cv 309, 2011 WL 13234297, at *2 (E.D. Va. October 11, 2011) (settlement reflected resolution of a *bona fide* dispute between the parties when the defendant contended it properly classified its employees as exempt under the FLSA).

### B.    The Proposed Settlement is Reasonable

When examining whether the settlement is reasonable, courts consider the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of the plaintiffs' success on the merits and the

amount of the settlement in relation to the potential recovery. *Brockman,* 2018 WL 4956514, at * 2. The terms of the Settlement satisfy each of these six factors.

### 1. The Amount of Discovery Engaged in by the Parties

This collective action was resolved only after Defendants produced comprehensive payroll data for all Settlement Class Members and records identifying time-stamped work activity and travel records for a sample of Care Coordinator Non-RNs. Ex. 2, Salas Decl. ¶ 21. In addition, at the time the action was resolved, seven individuals joined this action and provided information and documents to Plaintiffs' Counsel. *Id.*, ¶ 18. The stage of litigation had advanced so that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id.,* ¶¶ 22, 25, 27. As a result, the Parties had all information that they needed to evaluate the strength of their claims. This factor supports granting approval of the Settlement.

### 2. The Stage of the Proceedings

The parties litigated this case for nine months. They exchanged substantial information and voluminous records before participating in a day long mediation with the Honorable F. Bradford Stillman (Ret.), which resulted in the resolution of this Action.

If the litigation had continued, it would have been complex, expensive, and protracted. There is no precedential authority on the exemption defenses that Defendants asserted for Care Coordinator Non-RN position. As a result, the parties likely would have spent significant resources briefing contested issues. In addition, the Parties would have potentially had to retain expert witnesses to testify to the hours worked by Care Coordinator Non-RNs. Given the lack of precedential authority, the parties likely would have appealed any final judgment entered by this Court. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now.

### 3. There is No Evidence of Fraud or Collusion

The parties negotiated the Settlement at arm's-length following the exchange of robust mediation statements and with the assistance of a private mediator. Ex. 2, Salas Decl. ¶¶ 23-24. There was no collusion.

### 4. The Experience of Plaintiffs' Counsel

The attorneys at Werman Salas P.C. are highly experienced class and collective action litigators. Ex. 2, Salas Decl. ¶¶ 3-11; Exhibit 3, Declaration of Douglas M. Werman Decl., ¶¶ 6-13 (herein "Werman Decl. ¶__"); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017) (Douglas Werman and Werman Salas P.C. are "national leaders in advocating the rights of working people in wage and hour litigation" and describing Mr. Werman as a "highly respected and experienced lawyer[]…"); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.) (recognizing Mr. Werman and Ms. Maureen Salas as a "highly experienced attorney" in wage and hour class actions). Mr. Werman is one of ten lawyers (five employee-side lawyers and five defense lawyers) who was nominated to draft proposed Initial Discovery Protocols for individual Fair Labor Standards Act ("FLSA") cases, a pilot project that has been implemented by individual judges throughout the United States District Courts. Ex. 3, Werman Decl., ¶ 10; See, https://www.txs.uscourts.gov/sites/txs/files/Final_Initial_Discovery_Protocols_FLSA.pdf. The project and the product are endorsed by the Federal Judiciary Center and Civil Rules Advisory Committee and is supervised by the Institute for the Advancement of the American Legal System. *Id.* Mr. Werman is a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Ex. 3, Werman Decl., ¶ 13. Ms. Salas is a contributing editor of Chapter 17 ("Collective Actions

and 'Hybrid Class' Actions") of that same treatise. Ex. 2, Salas Decl. ¶ 8. Both Mr. Werman and

Ms. Salas are frequent speakers on wage and hour matters both locally and on a national basis.

Ex. 2, Salas Decl. ¶ 7; Ex. 3, Werman Decl., ¶ 9.

Jack Siegel and Travis Hedgpeth also are experienced wage and hour litigators. Each has

significant experience representing care management employees. Exhibit 4, Declaration of Jack

L. Siegel ¶ 4 (herein "Siegel Decl. ¶ _"); Exhibit 5, Declaration of Travis Hedgpeth ¶ 5. Their

prior litigation experience has given them a comprehensive understanding of the health insurance

and care management industry, federal and state laws relating to Medicare and Medicaid

administration, and all the job duties of care management employees is essential to maximize the

chance of an early resolution on behalf of a broad class of individuals. Ex. 4, Siegel Decl. ¶ 10;

Ex. 5, Hedgpeth Decl. ¶ 12.

The role of local counsel for the Plaintiffs was filled by Harris D. Butler, III and Zev H.

Antell of the Richmond, Virginia law firm Butler Royals, PLC.  Messrs. Butler and Antell have

significant experience as counsel in FLSA collective actions within Virginia's Federal Courts

including, but not limited to, *Rogers et al. v. City of Richmond,* 3:11cv620 (E.D. Va. Richmond),

*Devine, et al. v. City of Hampton,* 4:14cv81 (E.D. Va. Norfolk), *Wright et al. v. Roanoke*

7:18cv210 (WD VA Roanoke), *Clinton et al. v. GEICO,* 2:16cv430 E.D. Va. Norfolk), *LaCroix*

*et al. v. Portsmouth,* 2:13cv533 (EDVA Norfolk), *Hall v. Dominion,* 3:18cv321 (E.D. Va.

Richmond).  Exhibit 6, Declaration of Zev Antell ¶¶ 5, 9-13, (herein "Antell Decl. ¶ _").  Mr.

Butler and Mr. Antell are both regular speakers at Continuing Legal Education Seminars both

within and outside Virginia dealing with FLSA and associated matters. Ex. 6, Antell Decl. ¶¶ 7-

9.

Plaintiffs' Counsel's extensive experience as wage and hour litigators supports approval of the Settlement.

### 5.   The Opinions of Counsel

Courts are entitled to give weight to the opinion of competent counsel.  *Gagliastre,* 2019 WL 2288441, at *3. Plaintiffs' Counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions in the managed health care industry, Plaintiffs' Counsel's opinion is that the Settlement is fair, reasonable and adequate.  Ex. 2, Salas Decl. ¶ 35. The opinion of counsel supports approval of the Settlement.

### 6.   The probability of the plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery

The Settlement has the effect of (1) providing monetary relief to those Settlement Class Members who have already opted into the Action and those who choose to negotiate their settlement checks and become Participating Settlement Class Members, (2) in exchange for a narrow and limited release of the overtime wage claims raised in the Action only, and (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates Settlement Class Members who choose to participate in the Settlement and eliminates the possibility of decertification of the collective following phase two discovery, loss on summary judgment, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit

that Settlement Class Members will immediately receive is a significant factor weighing in favor
of the Court's approval of the proposed Settlement. The Gross Settlement Amount represents
150% of the overtime wages owed to all Settlement Class Members assuming they worked 5
additional hours during each and every workweek they worked as a salaried Care Coordinator
Non-RN.  Ex. 2, Salas Decl. ¶ 32.  Said another way, this is the equivalent to Settlement Class
Members recovering 75% of their overtime wages and 75% of their liquidated damages. *Id*. Even
*after* the payment of attorneys' fees and costs, settlement administration costs, and the
participation awards, all Settlement Class Members will receive a check representing over 98%
of their owed overtime wages. *Id*. The largest settlement payment is more than $7,000, with the
average Settlement Payment to the Class Members being approximately $3,125. Ex. 2, Salas
Decl. ¶ 33.  This is an excellent result given that Defendants deny that Care Coordinator Non-
RNs are entitled to overtime at all and vigorously dispute that Care Coordinator Non-RNs
regularly worked over 40 hours each week. *Id*. In addition, Settlement Class Members who have
not yet opted into the Action may elect to not cash their Settlement Payment check and not
release their overtime wage claims.

The recovery by the Settlement Class Members is well within the normal range for
approval of FLSA settlements. *Brockman,* 2018 WL 4956514, at * 4 ("Courts have found that
sixty or eighty percent recovery is sufficient.")

**V.     PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND EXPENSES ARE
        REASONABLE**

**A.      The Standard for Approving Attorneys' Fees in FLSA Settlements**

The attorneys' fees provision of the FLSA exist to enable plaintiffs to employ skilled
lawyers and, thereby, to help ensure enforcement of the substantive provisions of the Act. 29
U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the

plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In reviewing the appropriateness of an attorneys' fee award in an FLSA settlement, the court must review "'the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement.'" See *Poulin v. General Synamics Shared Red., Inc.,* No. 3:09-cv-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010), quoting *Silva v. Miller,* 954 F. Appx 349, 351 (11th Cir. 2009). It is within the Court's discretion to decide how to determine a reasonable attorneys' fee. *Gagliastre,* 2019 WL 2288441, at * 4. Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method – "the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases" like this one. *Gagliastre,* 2019 WL 2288441, at * 4, citing *Goldenberg v. Marriot PLP Corp.,* 33 F. Supp. 2d 434, 438 (D. Md. 1998); *see also Jones v. Dominion Resources Services, Inc.,* 601 F. Supp. 2d 756, 758 (2009) (collecting cases in the Fourth Circuit for the proposition that the percentage method has "overwhelmingly" become the preferred method for calculating fees in common fund cases). The percentage of the fund method calculation is preferred because it "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys" and it allows courts to reward counsel for the "efficient settlement of a case." *Jones,* 601 F. Supp. 2d at 759.

In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Devine v. City of Hampton, Virginia,* No. 4:14cv81, 2015 WL

10793424, at * 3 (E.D. Va. Dec. 1, 2015). In *Winingear,* the Court permitted Plaintiffs' Counsel to recover 35% of the settlement fund in a hybrid FLSA and Rule 23 action, which was a 1.6 multiplier of counsel's lodestar. The court deemed the fee reasonable because plaintiffs signed contingency fee arrangements providing counsel with 40% of the recovery, the court had "routinely" approved fee recoveries around 40% percent in other FLSA litigation, the prosecution of the action required extensive discovery and research into the exemptions at issue, plaintiffs' counsel had an excellent reputation, and officers would be receiving an average award of over $2,000. *Winingear,* 2014 WL 3500996, at *6-7.

Here the Named Plaintiff signed a fee agreement granting Plaintiffs' Counsel a 40% interest in the gross amount recovered. Ex. 2, Salas Decl. ¶ 46. Plaintiffs' Counsel have voluntarily reduced their fee and seek $33^{1/}3$% of the Gross Settlement Amount, or $289,333.33. Ex. 1, Joint Stipulation, § 5(a)(i); Ex. 2, Salas Decl. ¶ 47. This reduced percentage aligns with the amounts other district courts in this circuit have awarded using the percentage of the fund recovery method in FLSA litigation. Ex. 6, Antell Decl. ¶ 14; see *Hall v. Dominion Energy, Inc.,* Case No. 3:18-cv-321 (E.D. Va. August 22, 2019), ECF No. 90 (approving attorneys' fees in the amount of 35% of a $3,800,000 common fund in a FLSA collective action); *Wright and Pendleton v. City of Roanoke, Virginia,* Case No. 7:18-cv-210 (W.D. Va. June 28, 2019), ECF No. 47 (approving attorneys' fees and costs in the amount of 33.33% of a $1,200,000 common fund in a FLSA collective action); *Devine,* 2015 WL 10793424, at * 3 (approving attorneys' fees and costs in the amount of 33.98% of the $3,500,000 common fund in a FLSA collection action); *Winingear v. City of Norfolk,* No. 2:12cv560, 2014 WL 3500996 (E.D. Va. July 14, 2014) (approving attorneys' fees in the amount of 35% of the $3,200,000 common fund in combined Rule 23 and FLSA collective action).

**B.    A Lodestar Cross Check Demonstrates Plaintiffs' Counsel's Request for Fees is Reasonable**

When performing a cross-check of the reasonableness of the lodestar, courts weigh the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client, and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978). There is no strict manner in which these factors are to be considered and applied, and a court is not obligated to examine factors that do not apply. *LaFleur v. Dollar Tree Stores, Inc.,* 189 F. Supp. 3d 588, 595 (E.D. Va. 2016) (Jackson, J.).

**1.    Lodestar Amount and Time and Labor Expended (Hensley Factor 1)**

Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar. *Grissom v. The Mills Corp*., 549 F.3d 313, 320-21 (4th Cir. 2008). The reasonable time Plaintiffs' Counsel has expended in litigating this collective action, and the reasonable rates for that work, are as follows:

| Timekeeper | Rate | Total Hours | Fees |
|---|---|---|---|
| Douglas M. Werman | $ 550.00 | 81.38 | $  44,759.00 |
| Maureen Salas | $ 450.00 | 127.32 | $  57,294.00 |
| Sarah Arendt | $ 375.00 | 6.19 | $   2,321.25 |
| Michael Tresnowski | $ 290.00 | 15.35 | $   4,451.50 |
| Jacqueline Villanueva | $ 230.00 | 4.00 | $     920.00 |
| Cristina Calderon | $ 175.00 | 34.51 | $   6,039.25 |
| Adriana Rodriguez | $ 150.00 | 6.17 | $     925.50 |

| Maria Reyes | $ 135.00 | 2.01 | $ 271.35 |
|---|---|---|---|
| Vanessa Tecun | $ 135.00 | 1.68 | $ 226.80 |
| Jose Maldonado | $ 135.00 | 2.66 | $ 359.10 |
| Werman Salas Law Clerk | $ 0.00 | 6.17 | $ 0.00 |
| Jack L. Siegel | $ 450.00 | 110.10 | $ 49,545.00 |
| Travis Hedgpeth | $ 400.00 | 110.80 | $ 42,840.00 |
| Harris D. Butler, III | $ 550.00 | 8.00 | $ 4,400.00 |
| Zev Antell | $ 375.00 | 42.00 | $ 15,750.00 |
| Paul M. Falabella | $ 315.00 | 1.80 | $ 567.00 |
| Butler Royals Paralegals | $ 135.00 | 28.60 | $ 3,816.00 |
| **Total** | | | **$ 234,485.75** |

Ex. 2, Salas Decl. ¶ 49; Ex. 4, Siegel Decl. ¶ 7; Ex. 5, Hedgpeth Decl. ¶ 9; Ex. 6, Antell Decl. ¶ 15. The time provided above eliminates the time attorneys spent performing clerical tasks, eliminates a significant portion of time co-counsel spent conferring with each other about the case, and does not take into consideration the time Plaintiffs' Counsel will spend seeking approval of the Settlement, and if approved, fulfilling their obligations under the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Class Notice and Settlement Payments, and responding to Settlement Class Members' inquiries. Ex. 2, Salas Decl. ¶ 49; Ex. 4, Siegel Decl. ¶ 8; Ex. 5, Hedgpeth Decl. ¶ 10. Plaintiffs' Counsel have filed a motion to provide their detailed billing records to the Court to review *in camera.* See ECF No. 38.

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Werman Salas P.C. overwhelmingly represents employees on a contingent fee basis, but from time to time, it charges clients on an hourly basis. Ex. 2, Salas Decl. ¶ 55; Ex. 3, Werman Decl. ¶¶ 15-16. The rates sought by Plaintiffs' Counsel here are less than the amounts they charge to hourly paying clients and less than the hourly rates they have

23

been awarded by courts in other wage and hour actions. Ex. 2, Salas Decl. ¶¶ 53-60, 63.

Plaintiffs' Counsel reduced their hourly rates to align their rates within those charged in this

District. Ex. 2, Salas Decl. ¶ 57, Attachment A; Ex. 6, Antell Decl. ¶¶ 16-17.

### 2. The Results and Benefits Conferred Upon the Settlement Class Justify the Requested Award (Factor No. 8)

The results obtained for class members is often considered the most important factor in

determining the reasonableness of a fee award. *Jones,* 601 F. Supp. 2d at 761. This factor weighs

in favor of approving the fee request in light of the excellent result Plaintiffs' Counsel obtained

for Settlement Class Members. The Settlement is a non-claims made settlement. Ex. 2, Salas

Decl. ¶ 31. All Settlement Class Members will receive a check via U.S. Mail, with no pre-

conditions, representing their *pro rata* share of the Net Settlement Amount based on the addition

of five work hours in each and every week they worked during the class period.

The relief that Settlement Class Members will receive is outstanding. The Gross

Settlement Account compensates Class Members for 150% of the overtime wages owed to them

if 5 additional hours were added to each and every week they worked during the class period.

Even after the payment of Plaintiffs' Attorneys Fees, Litigation Expenses, and Participation

Payments, Class Members who cash their Settlement payments will receive 98% of the overtime

wages computed to be owed to them under the Settlement. The average Class Member

Settlement Payment is over $3,000.  Ex. 2, Salas Decl. ¶ 33. This is an exceptional result by any

measure inasmuch as Defendants vigorously disputed that they misclassified Care Coordinator

Non-RNs as exempt, disputed that Care Coordinator Non-RNs worked more than forty (40)

hours a week, disputed the appropriateness of liquidated damages, disputed the application of a

three year limitations period, and disputed that a collective action could be maintained through

trial.

Plaintiffs' Counsel also negotiated a favorable release for Settlement Class Members. Any claim a Settlement Class Member may have other than those in this lawsuit will remain unaffected, and all Settlement Class Members who have not already opted into the case and who do not cash their Settlement Payment checks will not release any of their claims against Defendants. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

### 3.    The Novelty and Difficulty of the Questions Raised (Factor No. 2)

Plaintiffs' claims are not simple claims for owed overtime wages. Plaintiffs, licensed practical nurses, worked remotely away from Defendants' place of business. Plaintiffs faced challenges in defeating the professional, administrative, and combination/hybrid exemption defenses Defendants raised and in proving the number of hours they worked in the absence of time records. Ex. 2, Salas Decl. ¶ 26. The Parties would have been required to engage in costly electronic discovery bearing on the job duties Care Coordinator Non-RNs performed, the level of supervision they were subjected to, and the hours Care Coordinator Non-RNs worked. *Id.*

### 4.    The Experience, Reputation and Ability of the Attorneys and the Skills Required to Properly Perform the Legal Services Rendered (Factor Nos. 3 and 9)

Plaintiffs' Counsel's fees are also "justified by their experience and recognition as national leaders in advocating for the rights of working people in wage and hour litigation." As described in Section IV.B.4, supra, and the declarations Counsel submitted in support of this motion, Plaintiffs' Counsel are well qualified to represent the Settlement Class Members.

Plaintiffs' Counsel obtained a favorable result in an efficient manner, but had this case not resolved, Plaintiffs' Counsel would have been prepared to litigate this matter through trial.

Ex. 2, Salas Decl. ¶ 48. Plaintiffs' Counsel have the skill and experience necessary to perform the significant discovery needed to pursue the collective action and to oppose the motion for summary judgment and motion for decertification that Defendants would have likely filed.

     **5.**     **Customary Fee for Like Work, Attorneys' Expectation at the Outset, and Attorneys' Fees Awards in Similar Cases (Hensley Factor 5, 6 and 12)**

Prior to filing the Complaint, Plaintiffs' Counsel executed fee agreements with the Named Plaintiff that entitled Plaintiffs' Counsel to forty (40%) of any recovery. Ex. 1, Salas Decl., ¶ 46. The Court, therefore, knows the amount negotiated in the marketplace at the outset of the case. Plaintiffs' Counsel accepted this case on a contingency fee basis, and they assumed a significant degree of risk that they would receive *no* fee for their services. Ex. 2, Salas Decl. ¶ 48; *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 569 (7th Cir. 2000) ("The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent."). Plaintiffs' Counsel faced risk in maintaining certification of the claims through trial and risk on prevailing on the merits of the claims.

As discussed in Section V.A *supra,* Plaintiffs' Counsel's request for 33 $^{1}/_{3}$% of the common is consistent with the percentage of the fund awarded in comparable wage and hour litigation. The request results in a 1.24 multiplier, which is within the range of multipliers district courts have found to be reasonable. *In re The Mills Corp. Securities Litigation,* 265 F.R.D. 246, 265 (E.D. Va. 2009) ("courts 'have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee'") citing *Jones v. Dominion Resources Services, Inc.,* 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009).

Based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the

excellent result achieved for Settlement Class Members, Plaintiffs' Counsel's request for 33 $1/3$% of the Gross Settlement Amount is reasonable.

### C.    Plaintiffs' Litigation Expenses

The Settlement provides that Plaintiffs' Counsel may apply to the Court for payment of costs and expenses up to $6,000. Plaintiffs' Counsel seek reimbursement of costs in the amount $4,980.54. These costs were incurred for filing and service fees ($900), mailing, delivery, and supply costs ($160.35), research ($42.54), mediation fees ($2,903.75), and out-of-town travel connected with attending the scheduling hearing and mediation ($973.90). See Ex. 2, Salas Decl. ¶ 65, detailing the costs incurred in this case.

Plaintiffs' Counsel's request for reimbursement of $4,980.54 in costs is appropriate because these costs and expenses were necessarily incurred in order to litigate and settle this case and because Plaintiffs' Counsel exercised care in minimizing the costs they incurred in this case. *Id.* ¶¶ 66-67.

## VI.    <u>THE REQUESTED PARTICIPATION PAYMENTS ARE REASONABLE</u>

The Settlement provides for Service Awards to Named Plaintiff Monica Brunty in the amount of $5,000.00 and to each Opt-in Plaintiff in the amount of $1,000 to acknowledge their service to the Settlement Class Members. Ex. 1, Joint Stipulation of Settlement, § 9(d)-(e). This payment is in addition to any payment they will receive as their *pro rata* share of the Net Settlement Amount.

Named plaintiffs in collective or class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

27

"Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

The Service Awards sought here are in recognition of the Named Plaintiffs' efforts in pursuing the claims raised in this Action on behalf of the Settlement Class Members. Ex. 2, Salas Decl. ¶ 37. Plaintiff Brunty provided factual information and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation. *Id.* Named Plaintiff filed this suit knowing that future employers may not hire her because she filed a lawsuit against a former employer. *Leigh v. Bottling Group, LLC,* No. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012). The incentive reward is designed to compensate her for taking on such a risk. *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012).

Plaintiffs seek lesser awards for the Opt-in Plaintiffs who also provided a great service to Settlement Class Members. By joining the case, the Opt-in Plaintiffs increased Plaintiff Brunty's chance of success in obtaining conditional certification. Ex. 2, Salas Decl. ¶ 38. The Opt-in Plaintiffs participated in responding to Plaintiffs' Rule 26 (a)(1) disclosures, and they also provided information and documents necessary to allow Plaintiffs to achieve a successful resolution of the case. *Id.* In light of their substantial efforts resulting in a $868,000 settlement on behalf of 178 persons, Settlement Class Members will receive checks in amounts ranging from a minimum of $50.00 to a maximum of over $7,200. Ex. 1, Stipulation of Settlement, Attachment A.

Courts in this Circuit and others have approved incentive awards for similar activities. *Hall v. Dominion Energy, Inc.,* Case No. 3:18-cv-321 (E.D. Va. August 22, 2019), ECF No. 90

(approving $15,000 service award to Named Plaintiff and $5,000 service award to Opt-in Plaintiff in FLSA collective action); *Wright v. Pendleton v. City of Roanoke, Virginia,* Case No. 7:18-cv-210 (W.D. Va. June 28, 2019), ECF No. 47 (approving a total of $8,000 in service payments to two named plaintiffs in FLSA action). In total, the $11,000 in service awards to the seven Plaintiffs amount to 1.27% of the Gross Settlement Amount which is a reasonable percentage. *Leigh,* 2012 WL 460468, at *7 (approving $9,000 service award, which represented less than 1.5% of the total settlement fund, in FLSA action as fair and reasonable).

**VII.    CONCLUSION**

This Settlement is a result of contested litigation and was reached after extensive settlement negotiations with an experienced mediator. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Settlement Class Members with significant monetary relief. Because the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, it should be approved.

Dated:  April 9, 2020                Respectfully submitted,

/s/Zev Antell

Harris D. Butler, III (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Paul M, Falabella (VSB No. 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: (804) 648-4848
harris.butler@butlerroyals.com
zev.antell@butlerroyals.com
paul.falabella@butlerroyals.com

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 W. Washington Street, Suite 1402

Chicago, IL 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

Jack Siegel
SIEGEL LAW GROUP PLLC
4925 Greenville Avenue, Suite 600
Dallas, Texas 75206
Tel: (214) 790-4454
jack@siegellawgroup.biz

Travis Hedgpeth
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Bldv., Suite 510
Houston, Texas 77056
Tel: (281) 572-0727
travis@hedgpethlaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of April 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David A. Kushner   (VSB No. 71173)
William M. Furr   (VSB No. 29554)
James B. Wood   (VSB No. 86401)
Cameron A. Bonney   (VSB No. 90574)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510
Tel: 757-628-5500
Fax: 757-628-5566
Email:  dkushner@wilsav.com
         wfurr@wilsav.com
         jbwood@wilsav.com
         cbonney@wilsav.com


*Attorneys for Defendants*


<u>/s/  Zev Antell</u>
Zev H. Antell  (VSB No. 74634)
BUTLER ROYALS PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: 804-648-4848
Fax:  804-237-0413
Email:  zev.antell@butlerroyals.com