**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

MONICA BRUNTY, on behalf of herself
and others similarly situated,

     Plaintiff,

         v.                        **Civil Action No.** 2:19-cv-255

OPTIMA HEALTH PLAN, and SENTARA
HEALTH PLANS, INC.,

     Defendants.

## JOINT STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement ("Joint Stipulation") is made and entered into by, between, and among Monica Brunty, on behalf of herself, the Opt-in Plaintiffs, and others similarly situated, and Defendants Optima Health Plan and Sentara Health Plans, Inc., and is conditioned upon the Court's approval.

1.    DEFINITIONS

The following terms, when used in this Joint Stipulation, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

(a)    "Action" means the civil action filed in the Court, captioned *Brunty v. Optima Health Plan* and *Sentara Health Plans, Inc.,* Case Number 2:19-cv-255.

(b)    "Court" means the United States District Court for the Eastern District of Virginia, Norfolk Division.

(c)    "Defendants" mean Optima Health Plan and Sentara Health Plans, Inc.

(d)    "Effective Date" means the date on which Court enters an Order approving the Joint Stipulation.

1

(e)      "Gross Settlement Amount" means the total amount of the Settlement to be paid by Defendants in the amount of $868,000.00 and that will be distributed in accordance with this Joint Stipulation. The Gross Settlement Amount excludes Defendants' obligation to pay the employer's share of applicable state and federal payroll taxes on the wage portion of the Settlement Payments, which Defendants will pay separate and apart from the Gross Settlement Amount.

(f)      "Named Plaintiff" means Monica Brunty.

(g)      "Net Settlement Amount" is the amount available from the Gross Settlement Amount for the Settlement Payments to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members and shall be the Gross Settlement Amount minus the amounts deducted from the Gross Settlement Amount for payments to (1) the Named Plaintiff and Opt-in Plaintiffs for the Participation Payments; (2) Plaintiffs' Counsel for Attorneys' Fees and Litigation Expenses; (3) the costs of administering the Settlement to be paid to the Settlement Administrator.

(h)      "Opt-In Plaintiffs" refers to plaintiffs who filed a consent form prior to September 1, 2019. The Opt-in Plaintiffs are Pamela Langley, Kirby Baughn, Beth-Anee Fretz, Meagan Painter, Diana Perry, and Ashley Roby.  The Opt-In Plaintiffs and the Named Plaintiff shall be referred to individually and collectively as "Plaintiffs."

(i)      "Participation Payment" means payment to the Named Plaintiff and Opt-in Plaintiffs for time and effort associated with being the Named Plaintiff or an Opt-in-Plaintiff.

(j)      "Participating Settlement Class Members" means the Named Plaintiff and the Opt-in Plaintiffs. It also means all Settlement Class Members who elect to participate in the Settlement by endorsing, depositing and/or cashing  the settlement check issued to them pursuant to the terms of the Joint Stipulation.

2

(k)     "Parties" means the Named Plaintiff, Opt-in Plaintiffs, Participating Settlement Class Members, and Defendants, collectively.

(l)     "Plaintiffs' Counsel" means Werman Salas P.C.; The Hedgpeth Law Firm, PC, Siegel Law Group PLLC, and  Butler Royals, PLC.

(m)     "Released Parties" means Defendants and their former and present parents, subsidiaries, affiliates and affiliated entities, and their respective agents, officers, directors, managers, members, shareholders, and legal representatives.

(n)     "Settlement" shall mean the resolution of the Action as effectuated by this Joint Stipulation.

(o)     "Settlement Account" shall be a Qualified Settlement Fund established by the Settlement Administrator under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq*.

(p)     "Settlement Administrator" shall be Analytics Consulting LLC. The Settlement Administrator will be responsible for administering the entire Settlement, including all applicable tax withholding, and issuing all applicable tax forms and completing all required tax reporting.

(q)     "Settlement Class Members" means individuals (1) who worked for Defendants as Care-Coordinators (Non-RNs) between April 30, 2017 and February 5, 2020; and (2) who were paid a salary. All Settlement Class Members are identified on Attachment A.

(r)     "Settlement Payment" means the amount to be paid to the Named Plaintiff, Opt-in Plaintiffs and Settlement Class Members from the Net Settlement Fund as described in Section 6(a) of this Joint Stipulation.

(s)     "Settlement Time Period" means the period between April 30, 2017 and the date of approval.

2.     THIS JOINT STIPULATION IS CONTINGENT ON COURT APPROVAL

If, for any reason, the material terms of this Joint Stipulation are not approved by the Court, this Joint Stipulation will be void and of no force and effect. Further, nothing from the settlement process, including documents created or obtained through the settlement process, shall be admissible as evidence in the Action.

3.     DIRECT PAYMENT TO NAMED PLAINTIFF, OPT-IN PLAINTIFFS, AND SETTLEMENT CLASS MEMBERS

The Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members shall not be required to submit a claim form to participate in this Settlement.

4.     STATEMENT OF NO ADMISSION

(a)     Although the Parties do not abandon the positions they took in the Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that this Settlement is fair, reasonable, and the best way to resolve the disputes between and among them.

(b)     Defendants deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the collective allegations asserted in the Action. Defendants deny that any of the employees at issue in the Action were misclassified or that they worked the number of hours alleged by Plaintiffs or that Plaintiffs used to estimate the payments described in this Joint Stipulation. Defendants further deny that this Action is appropriate for collective treatment for any purpose other than settlement. Defendants agree to resolve the Action via this Joint Stipulation, but to the extent that the Court shall not ultimately approve this Joint Stipulation of Settlement, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted by Named Plaintiff, Opt-In Plaintiffs, and/or potential future plaintiffs in the Action should the case proceed, upon all

4

procedural and substantive grounds, and the parties shall revert to their positions *status quo ante* their execution of this Joint Stipulation of Settlement. The Parties agree that this Agreement does not constitute an adjudication of the merits of the Action or any other matters released in the Joint Stipulation.

(c)     This Joint Stipulation shall not be deemed an admission by, or a basis for estoppel against, Defendants that conditional certification pursuant to 29 U.S.C. § 216(b) in the Action or any other action is proper or cannot be contested on any grounds. Additionally, neither this Joint Stipulation, nor the settlement, nor any document, statement, or proceeding or conduct related to this Joint Stipulation, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties, including any evidence of a presumption, concession, indication or admission by the Released Parties of any liability, fault, wrongdoing, omission, concession, estimate of hours worked, or damage. Nor shall this Agreement be disclosed, referred to, offered or received in evidence against the Released Parties in any further proceeding in this Action, or in any other civil, criminal, or administrative action or proceeding except for the purposes of settling this Action or enforcing the settlement of this Action.

5.     <u>MONETARY TERMS OF SETTLEMENT</u>

(a)     The Gross Settlement Amount shall be allocated as follows, subject to Court Approval:

(i)     An amount not to exceed $289,333.33 to be paid to Plaintiffs' Counsel for Plaintiffs' Attorneys' Fees;

(ii)     An amount not to exceed $6,000.00 to be paid to Plaintiffs' Counsel for reasonably incurred Litigation Expenses;

(iii)     An amount of $5,000.00 to the Named Plaintiff for her Participation Payment; and

(iv)     An amount of $1,000 each to the six Opt-in Plaintiffs for their Participation Payments; and

(v)     Settlement Administration Costs in the amount of $5,482.00 to be paid to the Settlement Administrator.

(b)     The settlement amount that remains after the deductions described in Section 5(a) shall equal the Net Settlement Amount. The Net Settlement Amount shall be divided among the Named Plaintiff, the Opt-in Plaintiffs and the Settlement Class Members based on the computation described in Section 6(a) of this Joint Stipulation.

(c)     Defendants shall pay the employer's share of applicable federal and state payroll taxes associated with the wage portion of the Settlement Payments separate and apart from the Gross Settlement Amount.

6.     COMPUTATION OF SETTLEMENT PAYMENT

(a)     The ratable share of the Net Settlement Amount available for the Named Plaintiff's, the Opt-in Plaintiffs' and each Settlement Class Member's Settlement Payment will be calculated as described below in this section. Nothing herein shall be deemed an admission by the Released Parties that any Settlement Class Members, Opt-In Plaintiffs, or the Named Plaintiff actually worked the amount of hours described in this Section.

(i)     For each pay period between April 30, 2017 and February 1, 2020, the hours each Named Plaintiff, Opt-in Plaintiff, and Settlement Class Member was paid in under the Earnings Code "Regular" was summed to get the number of "Work Hours Paid."

(ii)     Plaintiff split the Work Hours Paid in each bi-weekly pay period into two work weeks. Plaintiff distributed the Work Hours Paid by allotting any Work Hours Paid from 0 to 40 into Work Week 1 and any Work Hours Paid greater than 40 to Work Week 2.

(iii)    Plaintiff added "Additional Work Time" to the Work Hours Paid in each work week to compute the "Total Hours Worked per Work Week." For settlement purposes only the Additional Work Time is 5 hours.

(iv)    Plaintiff summed the amount of Earnings paid in each Pay Period under the following Earnings Codes: Regular, Holiday PAL, PAL, Flex Add Pay, Sick, Sick PAL, Exempt Fill, PAL Unscheduled, Bereavement, Jury, and Training.

(v)     Plaintiff distributed the Pay Period Earnings by allocating half the earnings to Work Week 1 and half the earnings to Work Week 2.

(vi)    Plaintiff computed the Regular Rate in each work week by dividing the weekly earnings by the Total Hours Worked Per Work Week.

(vii)   For each work week where the Total Hours Worked Per Work Week exceeds 40 using this calculation, the "Overtime Hours Worked" in the work week equals the number of hours worked over 40 using this calculation.

(viii)  The number of Overtime Hours Worked in each work week was then multiplied by one-half the individual's Regular Rate to determine the amount of "Overtime Wages Owed in the Work Week;"

(ix)      The "Liquidated Damages Owed in the Work Week" equals the amount of Overtime Wages Owed in the Work Week.

(x)      The sum of the amount of Overtime Wages Owed in the Work Week in all work weeks equals the amount of "Owed Overtime Wages" and the sum of the amount of Liquidated Damages Owed in the Work Week in all work weeks equals the amount of "Liquidated Damages;"

(xi)      The Named Plaintiff's, each Opt-in Plaintiff's, and each Settlement Class Member's ratable share of the Net Settlement Amount is determined by dividing the sum of his or her "Owed Overtime Wages" and "Liquidated Damages" by the total of all "Owed Overtime Wages" and "Liquidated Damages" for the Named Plaintiff, all Opt-in Plaintiffs, and all Settlement Class Members ("Ratable Share"). The Named Plaintiff's, each Opt-in Plaintiff's and each Settlement Class Member's Settlement Payment is determined by multiplying the Net Settlement Amount by his or her respective Ratable Share.

(b)      The Named Plaintiff's, each Opt-in Plaintiff's, and each Settlement Class Member's Settlement Payment is identified in Attachment A.

(c)      The Settlement Administrator shall issue one check to the Named Plaintiff, each Opt-in Plaintiff, and each Settlement Class Member for his or her Settlement Payment, allocated as follows:

(i) One-half of each Settlement Payment shall be allocated as wages. Regular

employee payroll deductions shall be taken from this portion of each Settlement Payment, as calculated by the Settlement Administrator. The Settlement Administrator shall withhold and timely remit and report to the appropriate taxing authorities the employee's share of any applicable payroll taxes or contributions (i.e. FICA, FUTA, SUTA, and Medicare) from that portion of each Settlement Payment allocated to wages. The Settlement Administrator shall issue an IRS Form W-2 for this portion of the Settlement Payment to each Participating Settlement Class Member. While Defendants are responsible for the employer's share of payroll taxes, the employee's share will be deducted from the wage portion of their Settlement Payment.

(ii)    One-half of each Settlement Payment will be allocated as liquidated damages, which shall not be subject to required withholdings and deductions and shall be reported as nonwage income as required by law. Payroll deductions and income taxes shall not be taken from the non-wage income of each Settlement Payment. The Settlement Administrator will issue an IRS Form 1099 to each Participating Settlement Class Member.

(iii)    The amount to the Named Plaintiff for the Participation Payment shall be paid in addition to the Named Plaintiff's Settlement Payment and treated as non-wage income. The Settlement Administrator shall issue the Named Plaintiff an IRS Form 1099 for her Participation Payment.

(iv)    The amount to the Opt-in Plaintiffs for their Participation Payments shall be paid in addition to the Opt-in Plaintiffs' Settlement Payment and treated as non-wage income. The Settlement Administrator shall issue the Opt-in Plaintiffs an IRS Form 1099 for their Participation Payments.

(d)    To the extent permitted by law, in no event shall any Settlement Payment or Participation Payment create any credit or otherwise affect the calculation of or eligibility for any

9

compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Participation Payment be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

7.    <u>RELEASE OF CLAIMS</u>

(a)    In exchange for their Settlement Payments, and by endorsing, signing and/or cashing their checks, Participating Settlement Class Members shall be deemed to have released and discharged the Released Parties from:

> All claims or causes of action they have for or related to unpaid overtime wages, while they worked for the Released Parties as salaried Care Coordinator Non-RNs during the Settlement Time Period, including claims under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* state law, local law, or common law.

(b)    Settlement Class Members who have not already opted-in to the Action and who endorse, sign, and/or cash settlement checks shall "opt-in" to the FLSA collective action claims in this Action. Settlement Class Members' settlement checks shall contain, on the back of the check, the following limited endorsement:

*CONSENT TO JOIN AND RELEASE OF CLAIMS:*

> By endorsing, signing and/or cashing this check, I consent to join the Fair Labor Standards Act claims in the case *Brunty v. Optima Health Plan, et al.* No. 1:19-cv-255, pending in the United States District Court for the Eastern District of Virginia, and I agree to be bound by the Settlement Agreement and release in that case. I agree that I have read the Notice that came with this check, and understand that by endorsing, signing and/or cashing this check, I am waiving and releasing my right to pursue certain overtime claims against the Defendants in that case.

_____        Dated: _____
Signature

(c)     Except as referenced in Section 7(d), Settlement Class Members who do not endorse, sign, and/or cash their Settlement Payment checks will not release any overtime claim arising under the FLSA, state law, local law, or common law.

(d)     By becoming a party to this Joint Stipulation, and assuming the Court approves this Settlement Agreement, the Named Plaintiff and the Opt-in Plaintiffs hereby waive all claims and/or causes of action they have against the Released Parties for and/or related to unpaid overtime wages, while they worked for Released Parties as salaried Care Coordinator Non-RNs during the Settlement Time Period including claims under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* state law, local law, or common law.  The Named Plaintiff and Opt-in Plaintiffs agree to cooperate to take good faith steps to obtain dismissal with prejudice of the Action.

8.     <u>PROCEDURE FOR FLSA OPT-INS</u>

Pursuant to the FLSA and as set forth in Section 7(b), all Settlement Class Members who endorse, sign, and/or cash a settlement check shall give his/her consent in writing to become a party plaintiff in the FLSA collective action claims asserted in the lawsuit, in accordance with 29 U.S.C. § 216(b).  The Notice of Settlement shall provide that Settlement Class Members who endorse any settlement check thereby consent in writing to become a party plaintiff in this action pursuant to 29 U.S.C. § 216(b).  Within ten (10) days after the 120-day period for Settlement Class Members to cash checks has expired, the Settlement Administrator shall provide copies of endorsed settlement checks to the Parties, which shall include the Consent to Join the Action and Release of Claims endorsement described in Section 7.b in filing-ready format.  Plaintiffs' Counsel will file such copies with the Court within ten (10) days of receipt from the Settlement Administrator. The Parties agree that the procedures set forth in this paragraph shall constitute compliance with the requirements under 29 U.S.C. § 216(b), that persons opting in to an FLSA

collective action consent in writing, and that such consent be filed with the Court.

9.    ATTORNEYS' FEES AND EXPENSES AND NAMED PLAINTIFF'S AND OPT-IN
      PLAINTIFFS' PARTICIPATION PAYMENTS

(a)    Plaintiffs' Counsel may apply to the U.S. District Court for the Eastern District of
Virginia, or any other Court taking jurisdiction over the Action, for an award of Plaintiffs'
Attorneys' Fees and an award of Plaintiffs' Litigation Expenses.  The amount of the Plaintiffs'
Attorneys' Fees will not exceed $289,333.33. The amount of Plaintiffs' Litigation Expenses shall
not exceed $6,000.00. Such application shall be filed in connection with the Motion for Approval
of the Joint Stipulation. Defendants shall not object to Plaintiffs' Counsel's request for Court
approval of Attorneys' Fees and Litigation Expenses in these amounts or in any appeal regarding
such approval. This Settlement Agreement is not conditioned upon the Court's approval of
Plaintiffs' Attorneys' Fees and Litigation Expenses.

(b)    Plaintiffs and Plaintiffs' Counsel understand and agree that any fee payments made
pursuant to this Joint Stipulation will be the full, final, and complete payment of all attorneys' fees
and costs arising from or relating to the representation of the Plaintiffs in the Action, and any other
attorneys' fees and costs associated with the investigation, discovery, settlement, and/or
prosecution of the Action.  As an inducement to Defendants to enter into this Joint Stipulation, and
as a material condition thereof, the Named Plaintiff and Plaintiffs' Counsel hereby irrevocably and
unconditionally release, acquit, and forever discharge, and covenant and agree not to sue, institute,
or cause to institute any further proceedings in any court or comparable forum against Defendants
with respect to any liability for such fees and/or costs.  Furthermore, Plaintiffs and Plaintiffs'
Counsel represent and warrant that no attorney, other than Plaintiffs' Counsel, has any attorney's
fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Action,
and that the terms of this Joint Stipulation shall fully satisfy any and all claims by any attorney

12

arising out of or by virtue of or in connection with the Action. Nothing in this Section shall preclude Plaintiffs from appealing the allocation of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses should the sum awarded by the Court fall below the amount requested by Plaintiffs' Counsel provided that it is consistent with the provision of this Stipulation. If Plaintiffs' Counsel elect not to appeal or if the Court of Appeals affirms the decision, only the reduced amounts will be deemed to be Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses for purposes of this Joint Stipulation. Any amounts for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses not awarded shall be added to the Net Settlement Amount available for distribution to Plaintiffs and Settlement Class Members.

(c)    All of Defendants' own legal fees, costs and expenses incurred in this Action shall be borne by Defendants.

(d)    Plaintiffs' Counsel shall apply for a Participation Payment for Named Plaintiff in an amount not to exceed $5,000.00, in acknowledgment of her time and effort spent prosecuting this Action on behalf of Settlement Class Members and in recovering wages on behalf of all Settlement Class Members. The payment shall be paid from the Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

(e)    Plaintiffs' Counsel shall apply for Participation Payments not to exceed One Thousand Dollars ($1,000) to each of the six Opt-In Plaintiffs, in acknowledgment of their time and effort spent prosecuting this Action on behalf of Settlement Class Members. The payments shall be paid from the Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

10.    <u>SETTLEMENT TIMELINE</u>

The Parties agree to follow the following timeline for the completion of the Settlement and dismissal of the Action:

(a)    <u>Stay of Action</u>: Pending the Court's approval of the Settlement, the Parties agree to stay the Action and agree not to litigate any discovery issues.

(b)    <u>Settlement Approval</u>:

(i)    Plaintiffs shall draft and file an Unopposed Motion for one-step Approval of this Joint Stipulation of Settlement as soon as practicable after this Joint Stipulation is fully executed.  Plaintiffs' counsel shall share a draft with counsel for Defendants, who shall have an opportunity to propose reasonable changes.  Plaintiffs' counsel will not unreasonably refuse to make any such changes.

(ii)    Provided that the Approval Order entered is consistent with the terms and conditions of this Joint Stipulation in all material respects, the Named Plaintiff, Opt-in Plaintiffs, Plaintiffs' Counsel, and Defendants all hereby waive any and all rights to appeal from the Approval Order, including all rights to any post-judgment proceedings, provided that this waiver does not apply if the Court alters the terms and conditions of this Joint Stipulation in any material respect, and the waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings. To exercise its right to appeal, that party must inform the other party, in writing, of the exercise of this right, within seven (7) days of the issuance of any order altering the terms and conditions of this Joint Stipulation in any material respect.  Before either party elects to exercise its right, that party must meet and confer in good faith with the other party to determine if an agreement can be reached modifying the Joint Stipulation to the mutual satisfaction of the Parties. All payment obligations under the Joint Stipulation will be suspended pending such resolution.  If any appeal is filed, all obligations under

this Joint Stipulation are suspended unless and until the appeal, including any subsequent appeals, are finally resolved.

(c)    Production of Class Data: Within fourteen (14) days of entry of the Order approving the Joint Stipulation, Plaintiffs' Counsel shall provide the Settlement Administrator with the last known mailing addresses and telephone numbers for all Settlement Class Members identified in Attachment A.  Also within fourteen (14) days of entry of the Order approving the Joint Stipulation, Defendants shall provide the Settlement Administrator with the social security numbers and last state worked for tax reporting purposes for the Named Plaintiff, Opt-in Plaintiffs, and all Settlement Class Members identified in Attachment A and any other information requested by the Settlement Administrator that is necessary to administer the Settlement.

(d)    Payment of the Employer Share of Payroll Taxes: Within seven (7) days of the entry of the Order approving the Joint Stipulation, the Settlement Administrator shall determine the employer's share of payroll employment taxes on Settlement Payments to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members and shall communicate such amount to Plaintiffs' Counsel and Defendants with a detailed explanation of the calculations.  In the event of any dispute as to the calculation of the employer's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in a good faith attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendants agree to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

(e)     <u>Payment of Total Settlement Payment:</u> Defendants will deposit $868,000.00, plus the employer's share of applicable payroll taxes into the Settlement Account (the deposits are collectively referred to as the "Total Settlement Payment") within fourteen (14) after the Court enters the Order approving the Joint Stipulation.  If there is a good faith dispute as to the amount of the employer's share of payroll taxes, Defendants shall have the option of only depositing $868,000.00 until such time as the dispute is resolved.

(f)     <u>Update of Settlement Class Members' Addresses</u>: Prior to mailing the Settlement Payments, the Settlement Administrator will verify the most recent mailing address for Settlement Class Members by using the National Change of Address (NCOA) Database, or a comparable database. The Settlement Administrator will notify Plaintiffs' Counsel of any address updates prior to the mailing of the Settlement Payments to Settlement Class Members.

(g)     <u>Issuance of Settlement Payments, Participation Payments to Named Plaintiff  and Opt-In Plaintiffs  and Class Counsel's Fees and Expenses</u>: The Settlement Administrator shall make the following payments:

(i)     Within fourteen (14) days after its receipt of the Gross Settlement Amount and the employer's share of payroll taxes, the Settlement Administrator shall deliver Settlement Payments via First Class U.S. Mail to the Named Plaintiff, each Opt-In Plaintiff, and each Settlement Class Member for his or her ratable share of the Net Settlement Fund as computed in Section 6(a) of this Joint Stipulation. The Settlement Payment checks shall be endorsable by and deliverable to Settlement Class Members for 120 days from the date they were mailed by the Settlement Administrator.  The Settlement Administrator shall include the Notice of Settlement, attached as Attachment B with each check that explains why the Settlement Class Member is receiving a Settlement Payment, what the Settlement Payment represents, and the effect of

16

endorsing, signing and/or cashing the check including that such endorsement, signing and/or cashing constitutes a release of overtime claims and constitutes consent to opt-in to the Action for settlement purposes.   The face of each check shall clearly state that the check must be cashed within 120 days.  The envelope containing the Settlement Payment shall be marked on its face with the words "Important Court Notice."

    (ii)  Within fourteen (14) days after its receipt of the Gross Settlement Amount and the employer's share of payroll taxes, the Settlement Administrator shall deliver the Participation Payments via First Class U.S. Mail to the Named Plaintiff and the Opt-in Plaintiffs who are eligible to receive a Participation Payment.

    (iii)  Within fourteen (14) days after its receipt of the Gross Settlement Amount and Employer's Share of payroll taxes, the Settlement Administrator shall deliver Plaintiff's Counsel award for Attorneys' Fees and Plaintiffs' Litigation Expenses, by wire transfer or check, to Class Counsel as Class Counsel directs.

    (iv)  If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address.  If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will attempt to contact the Settlement Class Member via telephone and, if unsuccessful, will run a new search of the Settlement Class Member's social security number and name through available databases, such as Accurint, and will forward the Settlement Payment to the new address obtained in this manner, if any. If, after this second mailing, the Settlement Payment is again returned as undelivered, and if no forwarding address is provided by the

Settlement Class Member or otherwise located within the 120 day check cashing period, the Settlement Payment distribution process shall end for that Settlement Class Member.

(v)       The Settlement Administrator shall provide Plaintiffs' Counsel and Defendants' counsel with an accounting of the proceeds disbursed to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members, upon request.

(vi)       Within seven (7) days after the expiration of the 120 day check cashing period, the Settlement Administrator shall provide to Defendants and Class Counsel: (a) scanned copies of the endorsed, signed and/or cashed Settlement Checks; and (b) a list, in Excel format, of the names of all Participating Class Members who endorsed, signed and/or cashed their Settlement Checks, including for each: (1) the amount of the Participating Class Member's Settlement Payment; (2) the amount of the Settlement Payment attributed to wages; and (3) the amount of the Settlement Payment attributed to liquidated damages.  During the 120-day check cashing period, the Settlement Administrator shall, upon request, provide copies of endorsed, signed, and/or cashed checks to counsel for Plaintiffs and/or Defendants.

(vii)       After expiration of the 120-day check cashing period, the amounts of checks that are not cashed, and any excess payroll taxes in the Settlement Account will be returned to Defendants within thirty (30) days.

11.    <u>DISMISSAL</u>

Plaintiffs' Counsel will file an Unopposed Motion for Approval of this Joint Stipulation of Settlement. In the motion, the Parties will request that the Court dismiss the Action with Prejudice, with such dismissal to officially take effect on the day that is 30 days after the close of the check cashing period.  Both Plaintiffs and Defendants shall stipulate to the entry of final judgment with no appeal provided the Court approves the material terms of the Parties' Agreement. Nothing in this paragraph prohibits Plaintiffs or Plaintiffs' Attorneys from appealing an award of Plaintiffs'

Attorney's Fees and Plaintiffs' Litigation Expenses should the sums awarded by the Court fall below that requested, provided that Plaintiffs' requests are consistent with this Joint Stipulation.

12.    RETENTION OF JURISDICTION

The Court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the terms of this Joint Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Joint Stipulation and all orders and judgments entered in connection therewith.

13.    MUTUAL FULL COOPERATION

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Joint Stipulation, and exercise good-faith efforts to accomplish the terms and conditions of this Joint Stipulation. At no time shall the Parties solicit or otherwise encourage Settlement Class Members to pursue individual actions.

14.    CONSTRUCTION

The terms and conditions of this Joint Stipulation are the result of lengthy, intensive, arm's-length negotiations between and among the Parties. Accordingly, this Joint Stipulation is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Joint Stipulation.

15.    INTEGRATION

This Joint Stipulation contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. There are no undisclosed side agreements between the Parties or their counsel. No rights hereunder may be waived except in writing.

16.    <u>BINDING ON SUCCESSORS AND ASSIGNS</u>

This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.  Plaintiffs' Counsel and the Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, related to this Action.

17.    <u>MODIFICATION</u>

This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Joint Stipulation may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

18.    <u>APPLICABLE LAW</u>

The terms of this Joint Stipulation shall be governed by and construed in accordance with Virginia law.

19.    <u>COUNTERPARTS</u>

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Electronic signatures compliant with the ESIGN Act and signatures transmitted by fax or .pdf shall have the same effect as an original ink signature.

20.    <u>PARTIES' AUTHORITY</u>

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

For Plaintiffs, on behalf of Monica Brunty, Pamela Langley, Kirby Baughn, Beth-Anee Fretz, Megan Painter, Diana Perry, Ashley Roby:

By: _____
      Maureen Salas

Title: <u>Plaintiffs' Counsel</u>

Dated: _____


For Defendants Optima Health Plan and Sentara Health Plans, Inc.:

By: _____
      Signature

      Dennis Mathcis
      Printed Name

Title: _President_____

Dated: _____

21

# ATTACHMENT A

**Brunty v. Optima**
**Joint Stipulation of Settlement**
**Attachment A**

|  | Settlement Class Member | Estimated Settlement Payment |
|---|---|---|
| 1 | Abdalla,Fatima | $ 5,622.43 |
| 2 | Adkins,Lisa D | $ 2,648.86 |
| 3 | Alcendor,Alicia | $ 2,487.25 |
| 4 | Alexander (Sharpe),PaTina | $ 6,306.95 |
| 5 | Anderson,Leneka | $ 2,855.87 |
| 6 | Anderson,Sueann N. | $ 52.99 |
| 7 | Angelozzi,Lindsey | $ 5,657.63 |
| 8 | Artybridge,Shonda D | $ 2,605.43 |
| 9 | Asante,Karen D | $ 2,965.26 |
| 10 | Bachus,Terrence M | $ 2,608.18 |
| 11 | Bates,Cheryl | $ 2,891.36 |
| 12 | Baughn,Kirby S | $ 814.73 |
| 13 | Bell (Pugh),Julia R | $ 1,435.01 |
| 14 | Berry,Tosha D | $ 2,513.29 |
| 15 | Berryman,Liltasha | $ 1,165.79 |
| 16 | Bivins,Julie | $ 1,319.99 |
| 17 | Blaner,Sheila | $ 1,293.20 |
| 18 | Bowen,Kelly | $ 5,382.31 |
| 19 | Briesacher (Woodson),Jacquelyn Ann | $ 1,991.22 |
| 20 | Brown,Eboni D | $ 2,942.71 |
| 21 | Brown,JoBeth | $ 2,737.98 |
| 22 | Brunty,Monica | $ 807.52 |
| 23 | Bryan,Kimberly | $ 2,480.37 |
| 24 | Bynum,Jamar | $ 1,276.74 |
| 25 | Cairnes,Kimberly | $ 755.86 |
| 26 | Calhoun,Amber N. | $ 6,197.63 |
| 27 | Carter,Kenneth D | $ 2,378.59 |
| 28 | Christian,Ashley | $ 4,884.06 |
| 29 | Coles,Quiandra D. | $ 5,627.61 |
| 30 | Collins,Christina M | $ 1,654.33 |
| 31 | Cooper,Yolanda | $ 6,008.96 |
| 32 | Cordle,Glenna | $ 5,644.04 |
| 33 | Correll,Poemm A | $ 1,097.17 |
| 34 | Damron,Jami A | $ 1,074.11 |
| 35 | Daughtry,Chimere T | $ 1,222.10 |
| 36 | Dawkins,LaToya D | $ 1,377.75 |
| 37 | Delaney,Mica J. | $ 5,215.43 |
| 38 | Dodd,Lynette S | $ 2,709.58 |
| 39 | Duff,Alison A | $ 2,152.55 |
| 40 | Farmer,Penelope (Penny) | $ 5,173.18 |
| 41 | Flowers,Christina R | $ 2,891.98 |

**Brunty v. Optima**
**Joint Stipulation of Settlement**
**Attachment A**

|     | Settlement Class Member | Estimated Settlement Payment |
|-----|-------------------------|:-----------------------------|
| 42  | Foreman,Kena | $ 1,343.40 |
| 43  | Forte,Candice | $ 6,231.63 |
| 44  | Fretz,Beth-Anee | $ 1,286.24 |
| 45  | Galford,Julia A | $ 1,357.89 |
| 46  | Gee,Sadeya M | $ 2,698.97 |
| 47  | Goggins,Michelle J | $ 3,763.53 |
| 48  | Guess,Kristen J. | $ 463.86 |
| 49  | Hall,Iesha N. | $ 2,763.45 |
| 50  | Hamlin,April L | $ 5,693.10 |
| 51  | Haskins-Bethune,Tierra N. | $ 2,333.31 |
| 52  | Hayes,Theresa M | $ 211.96 |
| 53  | Hegwood,Andrea D | $ 1,020.03 |
| 54  | Helton,Christopher L | $ 967.90 |
| 55  | Hill,Charles | $ 3,608.55 |
| 56  | Hill,Mary Beth | $ 1,290.54 |
| 57  | Holley,Kristal R | $ 3,138.43 |
| 58  | Holman,Desiree P | $ 5,702.75 |
| 59  | Holt,Julia | $ 5,434.86 |
| 60  | Hostetter,Teri | $ 5,429.25 |
| 61  | Hudson,Danaya M | $ 2,702.67 |
| 62  | Hunsaker,Kelley | $ 5,381.52 |
| 63  | Hutchins,Kelly | $ 3,838.13 |
| 64  | Jackson,Hope L | $ 2,517.69 |
| 65  | Jefferson,Cicely C | $ 1,398.47 |
| 66  | Johnson,Bardoro N | $ 6,039.55 |
| 67  | Johnson,Cora L | $ 2,087.01 |
| 68  | Johnson,Nichole L | $ 2,706.00 |
| 69  | Johnson,Quinesha | $ 5,642.93 |
| 70  | Johnson,Wanda M | $ 2,409.82 |
| 71  | Jones,Kiva S | $ 3,278.05 |
| 72  | Jones,Larita D | $ 3,184.75 |
| 73  | Jones,Robyn | $ 4,376.17 |
| 74  | Jones,Shonda | $ 2,963.68 |
| 75  | Kenyon,Sally B. | $ 1,968.33 |
| 76  | Kittrell (Walker),Jasmine J. | $ 2,124.87 |
| 77  | Klagges,Kristie | $ 1,486.47 |
| 78  | Langley,Pamela | $ 971.81 |
| 79  | Lantz,Meagan L | $ 2,491.90 |
| 80  | Law,Kimberly | $ 454.23 |
| 81  | Lewis,Nickesha L | $ 3,141.23 |
| 82  | Lunceford,Lakeshia | $ 6,374.97 |

**Brunty v. Optima**
**Joint Stipulation of Settlement**
**Attachment A**

|  | Settlement Class Member | Estimated Settlement Payment | |
|---|---|---|---|
| 83 | Mackey,Ronnetta | $ | 5,352.93 |
| 84 | Majette,Getina | $ | 2,285.04 |
| 85 | Malone,Caren G | $ | 6,157.20 |
| 86 | Malone,Latonya A | $ | 2,157.83 |
| 87 | Marshall,Benjamin C | $ | 3,061.21 |
| 88 | McEntee,Veronica E | $ | 3,110.50 |
| 89 | McFarlane,Rita | $ | 5,854.60 |
| 90 | McGee,Elizabeth | $ | 4,865.52 |
| 91 | McGee,Patricia A. | $ | 5,510.37 |
| 92 | Meador,Tiffany G | $ | 3,313.97 |
| 93 | Meir,Heather | $ | 5,971.62 |
| 94 | Mercier,Janet L | $ | 2,130.26 |
| 95 | Metelus,Catina Walker | $ | 5,275.34 |
| 96 | Michelsen,Nathan J | $ | 597.47 |
| 97 | Mills,Glenus | $ | 2,450.81 |
| 98 | Moore,Kendra L | $ | 3,251.00 |
| 99 | Moore,Richard L | $ | 521.43 |
| 100 | Morgan,Wanda D. | $ | 4,982.00 |
| 101 | Mounday,Demetris N. | $ | 5,428.38 |
| 102 | Norman,Brenda L | $ | 5,307.12 |
| 103 | Oglivie-Melu,Carla T | $ | 4,230.92 |
| 104 | Orelien,Kameron | $ | 5,564.00 |
| 105 | Ortegon,Jori L | $ | 3,888.45 |
| 106 | Painter,Meagan L | $ | 1,745.35 |
| 107 | Paulette,Fox E | $ | 562.62 |
| 108 | Payne,Shaqona L | $ | 2,300.42 |
| 109 | Perez,Carolyn | $ | 2,334.84 |
| 110 | Perry,Diana R | $ | 1,733.63 |
| 111 | Perry,Shavonne E | $ | 3,520.33 |
| 112 | Peterson,Taliscea | $ | 6,543.53 |
| 113 | Powell,Alvina D | $ | 2,498.74 |
| 114 | Purdie,Kevon | $ | 1,811.84 |
| 115 | Purdie,Mildreka A | $ | 1,935.08 |
| 116 | Rawls,Leslie G | $ | 4,482.71 |
| 117 | Reed,Deborah O | $ | 6,189.90 |
| 118 | Reyes-McDonald,Sonya | $ | 4,537.50 |
| 119 | Rivera Rodriguez,Keila | $ | 5,179.15 |
| 120 | Roberson,Brittanie T | $ | 2,436.47 |
| 121 | Robinson,LaTonya | $ | 5,252.39 |
| 122 | Roby,Ashley P | $ | 846.67 |
| 123 | Rogers,Brianna L | $ | 2,116.30 |

**Brunty v. Optima**
**Joint Stipulation of Settlement**
**Attachment A**

|  | Settlement Class Member | Estimated Settlement Payment |
|---|---|---|
| 124 | Rudder,Erin | $ 2,609.04 |
| 125 | Ruffner,Heather L | $ 2,292.58 |
| 126 | Ryan,Sheila | $ 4,714.82 |
| 127 | Schmink,Kim R | $ 633.16 |
| 128 | Scruggs,Linda L. | $ 4,138.87 |
| 129 | Shaffer,Kimberly G | $ 3,311.86 |
| 130 | Shumaker,Sharon P | $ 3,215.15 |
| 131 | Slappy,Annette M | $ 455.16 |
| 132 | Slate,Karen L | $ 4,950.43 |
| 133 | Small,Cierra | $ 5,684.05 |
| 134 | Smart,Laura B | $ 542.61 |
| 135 | Smelser,Gina | $ 4,955.37 |
| 136 | Smith,Alexandria | $ 230.41 |
| 137 | Smith,Angela L | $ 6,133.96 |
| 138 | Smith,Crystal | $ 1,059.81 |
| 139 | Smith,Danielle N | $ 468.49 |
| 140 | Smith,Lashanda C | $ 2,275.95 |
| 141 | Smith,Lauren M | $ 2,460.88 |
| 142 | Smith,Lonnie C | $ 3,622.29 |
| 143 | Smith,Nathanael | $ 5,261.75 |
| 144 | Snider,Anna C | $ 1,175.30 |
| 145 | Sobrepena,Julie-Marie C | $ 3,001.18 |
| 146 | Sours,Andrea M | $ 119.49 |
| 147 | Sprague,Georgia L. | $ 4,786.72 |
| 148 | Stiltner,Lisa | $ 4,870.79 |
| 149 | Stokes-Warren,Jean D | $ 2,449.54 |
| 150 | Stone,Katherine E | $ 917.02 |
| 151 | Tanksley Jr,Willie | $ 4,138.85 |
| 152 | Taylor,Kayla N | $ 977.68 |
| 153 | Thomas,Bernadette L | $ 3,167.65 |
| 154 | Toussaint,Natasha | $ 5,878.26 |
| 155 | Tran,Tifford L | $ 2,479.67 |
| 156 | Tran,Tuyen N | $ 2,303.31 |
| 157 | Twitty,Crystal | $ 5,391.04 |
| 158 | Van Benschoten,Heather | $ 2,752.37 |
| 159 | Vaughn,Rashaan | $ 2,563.94 |
| 160 | Walker,Grizzell | $ 5,095.68 |
| 161 | WALKER,RANDY | $ 1,059.87 |
| 162 | Walters-Mullins,Lyndsey R | $ 2,026.79 |
| 163 | Walton,Heather M | $ 455.16 |
| 164 | Ward,LaWona D | $ 4,027.96 |

**Brunty v. Optima**
**Joint Stipulation of Settlement**
**Attachment A**

|     | Settlement Class Member | Estimated Settlement Payment |
| --- | --- | --- |
| 165 | Washington,LaTanya A | $ 5,724.23 |
| 166 | Watson,Jennifer L | $ 2,590.70 |
| 167 | Wheaton,Kashara | $ 5,303.13 |
| 168 | Whitlow,Shawna D | $ 2,108.23 |
| 169 | Williams,Kiara | $ 2,049.49 |
| 170 | Williams,Nicole D | $ 3,092.49 |
| 171 | Williams,Sharvell L | $ 2,246.97 |
| 172 | Wilson,Sharon | $ 5,884.81 |
| 173 | Wiseley,Rick | $ 555.17 |
| 174 | Wisman,Brandy | $ 5,486.35 |
| 175 | Wood,April | $ 184.41 |
| 176 | Wooten,Cheryl | $ 7,255.13 |
| 177 | Wrice,Tanya E | $ 2,741.66 |
| 178 | Wright,Ashley | $ 3,803.56 |

# ATTACHMENT B

[_____, 2020]

[Settlement Class Member Name]
[Settlement Class Member Address]
[Settlement Class Member Address]

**Re:** **Notice of Settlement of Collective Action** (*Brunty v. Optima Health Plan and Sentara Health Plans, Inc.,* Case No. 2:19-cv-255)

Dear [Settlement Class Member]:

This letter is about the settlement of a lawsuit against Optima Health Plan and Sentara Health Plans, Inc. (referred to as "Optima") for alleged unpaid overtime wages. A settlement was approved by the United Stated District Court for the Eastern District of Virginia on ____, 2020. You may participate in the settlement because you worked for the Optima as a Care Coordinator Non-RN between April 30, 2017 and February 5, 2020, and you did not previously file a consent form to join the lawsuit as an opt-in plaintiff.

This letter explains the lawsuit, the settlement, how to participate in the settlement, and the effect of you cashing or depositing the enclosed check.

### 1.    What is this Lawsuit About?

Monica Brunty was employed by Optima as a Care Coordinator Non-RN. Ms. Brunty filed this lawsuit alleging that Optima misclassified her as an exempt employee and failed to pay her and other Care Coordinator Non-RNs overtime wages in violation of the Fair Labor Standards Act ("FLSA"). Six additional Care Coordinator Non-RNs joined the lawsuit as opt-in plaintiffs.

Optima denies that it violated the FLSA, denies that any employees were misclassified as exempt, and also claims various exemptions or exceptions and other defenses to the FLSA's overtime requirement. However, to avoid further dispute, protracted litigation, and related costs, Optima and the current Plaintiffs have agreed to settle the lawsuit.

The Court presiding over this case has not made any rulings on the merits of the claims or defenses in this action, and no party has prevailed.  Rather, the parties came to a mutually agreeable resolution which the Court has approved.

### 2.   Does the Court have an opinion as to the merits of this lawsuit?

This notice is for the sole purpose of providing you with objective and neutral information concerning your right to participate in the settlement. The Court takes no position regarding whether or not the claims made in this lawsuit have legal merit.

### 3.    How Was My Settlement Payment Calculated and What Does it Represent?

Plaintiffs' Counsel examined Optima's pay data and summed the number of work hours each Care Coordinator Non-RN was paid for working in each two-week pay period under the earnings code

"Regular," and then Plaintiffs' Counsel split the work hours into two work weeks. Plaintiffs' Counsel distributed the work hours paid by allotting any work hours paid from 0 to 40 into Work Week 1 and any work hours paid greater than 40 to Work Week 2. Plaintiffs' Counsel added alleged "Additional Work Time" to each work week to compute the total hours worked per work week. For settlement purposes, the alleged Additional Work Time is 5 hours. Accordingly, in weeks when a Care Coordinator Non-RN was paid for working 40 hours, after the inclusion of Additional Work Time (5 hours) agreed upon for settlement purposes, the hours increased to 45 hours. In weeks in which a Care Coordinator Non-RN was paid for working less than 35 hours (such as a week in which they took vacation), after the inclusion of alleged Additional Work Time (5 hours), the hours did not exceed 40 and there would be no settlement payment for that week.

Plaintiff subtracted 40 hours from any work week where total hours worked exceeded 40 to compute the alleged overtime hours worked. While Optima and the Plaintiffs did not agree on the hours allegedly worked, and Optima denied any entitlement to unpaid overtime, they agreed to this calculation for settlement purposes only to determine the amount of the settlement payment.

Plaintiffs' Counsel divided each Care Coordinator Non-RN's salary by the number of hours worked in a work week to determine the regular rate of pay. To compute the amount of alleged overtime wages owed, Plaintiffs' Counsel multiplied the number of overtime hours worked in the work week by one-half the regular rate. Alleged liquidated damages were computed in an amount equal to the amount of overtime wages.

The Defendants have agreed to pay a total of $868,000.00 to settle the lawsuit, which is the Gross Settlement Amount. From that amount, the following payments are being made: Plaintiffs' Attorneys' Fees in the amount of $XXX,XXX.XX; Litigation Expenses in the amount of $XXXX.XX; Settlement Administration Costs in the amount of $X,XXX; and payments to the plaintiffs who actively participated in the litigation for the time and effort associated with such participation in the total amount of $11,000. The remaining amount will be distributed among current and former Care Coordinator Non-RNs who worked during the Settlement Time Period.

Your payment was calculated by taking the overtime wages and liquidated damages that were calculated to be allegedly owed to you under the formula provided in the Settlement Agreement and by dividing that number by the total amount calculated to be owed to all Care Coordinator Non-RNs who are eligible to participate in the Settlement. The result is your ratable share of the Net Settlement Fund. The enclosed Settlement Payment is your ratable share of the Net Settlement Fund.

**If you have questions about your settlement amount, contact Plaintiffs' Counsel identified below in Paragraph 8**.

### 4. How Do I Participate In The Settlement?

To participate in the settlement, you should deposit or cash your Settlement Payment on or before [insert date 120 days from the date on the check]. You are required to personally sign the check in order to deposit or cash it.

I-1681414.1

5.    **Will I Owe Taxes On A Settlement Payment If I Participate?**

Your individual Settlement Payment was separated into two equal amounts: 50% was allocated to the claims asserted in the lawsuit for unpaid overtime wages, and 50% was allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims asserted in this lawsuit for unpaid overtime wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages will be reported as non-wage income on an I.R.S. Form 1099 if required by the I.R.S rules. Optima will pay the employer's share of applicable state and federal payroll taxes on the wage portion of your Settlement Payment. Normal employee payroll taxes have been deducted from the wage portion of your Settlement Payment. Neither Plaintiffs' Counsel nor the Defendants make any representations to you concerning the tax implications of the settlement payment. **Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.**

6.    **What Are My Options?**

(a)    **Option 1- Participate In the Settlement By Depositing or Cashing your Settlement Check**

If you deposit or cash your settlement payment by _____, 2020, you will be consenting to opt-in to the Fair Labor Standards Act claim and your written consent will be filed with the court. By opting into the lawsuit, you agree to waive and release all claims relating to allegations that you were not properly paid overtime wages when you worked for Optima or a related entity as a salaried Care Coordinator Non-RN between April 30, 2017 and the date the Court approved the Settlement. Depositing or cashing your settlement check is the only way you will receive a payment under the settlement agreement in this case.

Please note that the check contains the following language which verifies your agreement to opt-in to the lawsuit for purposes of the settlement and to waive and release any alleged overtime claims alleged in the lawsuit:

> *CONSENT TO JOIN AND RELEASE OF CLAIMS:*
>
> By endorsing, signing and/or cashing this check, I consent to join the Fair Labor Standards Act claims in the case *Brunty v. Optima Health Plan, et al.* No. 1:19-cv-255, pending in the United States District Court for the Eastern District of Virginia, and I agree to be bound by the Settlement Agreement and release in that case. I agree that I have read the Notice that came with this check, and understand that by endorsing, signing and/or cashing this check, I am waiving and releasing my right to pursue certain overtime claims against the Defendants in that case.

(b)    **Option 2- Do Not Participate In the Settlement and Do Not Release or Waive any Claims against the Optima**

If you do not deposit or cash your settlement payment by _____, 2020, the check will become void and you will not participate in the settlement. You will not receive any money from this

3

settlement and you will not release any overtime claims or lawsuits you may allegedly have against Optima.  You should be aware that all such claims are subject to a statute of limitations period.

**7.     Does The Law Protect Me From Retaliation If I Participate?**

Yes. It is illegal for Optima to retaliate or discriminate against you based on your decision to participate or not participate in the Settlement. Optima will not discriminate or retaliate against you in any way because of your decision to cash your Settlement Payment.  Although Optima denies any liability, Optima voluntarily agreed to this settlement of disputed claims, and in no way discourages any current or former employee from participating by cashing or depositing their check.

**8.     What Happens If My Address Changes Before I Receive my I.R.S. Tax Forms?**

If your address changes before you receive your I.R.S. Tax Forms, it is your responsibility to inform the Settlement Administrator, at the following phone number or address: *Brunty v. Optima Health Plan and Sentara Health Plans, Inc.,* c/o Administrator Name, Address, City, State, Zip, Telephone : (xxx) xxx-xxxx.

**9.     Are There More Details Available?**

Yes. This notice summarizes the basic material terms of the settlement. If you have questions about your Settlement Payment, you may contact Plaintiffs' Counsel at:

Maureen A. Salas – msalas@flsalaw.com
Werman Salas P.C.
77 W. Washington St., Suite 1402,
Chicago, IL 60602
Phone: (312) 419-1008   Fax: (312) 419-1025

**Do not contact the Judge or the Court Clerk, Optima or Optima's attorneys about this settlement.**

Any questions regarding the tax implications of the Settlement Payments should be directed to your tax professional.  Any questions about the Settlement should be directed to Plaintiffs' Counsel.

4

I-1681414.1